

# SUBCONTRACT

THIS SUBCONTRACT (hereafter "Subcontract") is made and entered into this **05/17/05** day by and between **Granite Halmar Construction Company, Inc.**, (hereafter "Contractor") whose address is **160 West Lincoln Avenue, Mt. Vernon, NY 10550** and

**K.G. Industries, Inc.**
**27-08 42nd Road**
**Long Island City, New York 11101**
**PH (718) 433-2211, FAX (718) 433-2200**

(hereafter "Subcontractor").

The Contractor has entered into a contract with the New York City Transit Authority (NYCTA), acting for itself and on behalf of the Contracting Party, the Metropolitan Transportation Authority, hereafter "Client", for the performance of certain work according to the terms and conditions of said contract, including but not limited to the General, Supplementary, Special and other Conditions and the general specifications, addenda, plans, drawings, maps and other documents made a part thereof, all of which are herein collectively referred to as the "Contract". The project (hereafter "Project") is generally described as follows: **Design and Construction of a Bus Depot and Central Maintenance Facility at Grand Avenue, Contract Number C-40418, in the Borough of Queens.**

Contractor and Subcontractor are collectively referred to herein from time to time as "Parties" and individually as "Party". The parties hereto are desirous of entering into a Subcontract whereby Subcontractor shall undertake the performance of a part of the work to be done under the Contract on the terms and conditions hereafter expressed.

**NOW, THEREFORE**, in consideration of the mutual promises and conditions herein contained, the parties hereto agree as follows:

**1.0 SUBCONTRACT DOCUMENTS:**

1.1 The Subcontract Documents shall consist of this Subcontract, all Attachments to this Subcontract, the Contract, all addenda issued prior to and all modifications issued after execution of the Contract and/or the Subcontract, all technical and special terms and conditions and all other documents, if any, listed, or referred to, if any, in the Subcontract Documents and all Attachments hereto. These form the Subcontract and are as fully a part of the Subcontract as if attached to or repeated herein. The Subcontract Documents may be reviewed by Subcontractor in Contractor's office during normal business hours.

1.2 Subcontractor shall be bound and obligated to Contractor by the terms of the Subcontract and of the Subcontract Documents and Subcontractor assumes toward Contractor all obligations, liabilities and responsibilities that Contractor, by the Contract, has assumed toward the Client. In addition, Subcontractor shall ensure his subcontractors are bound to Subcontractor as it pertains to the terms and conditions of the Prime Contract and this Subcontract, to no less extent than Subcontractor is bound to Contractor by this Subcontract. Contractor shall further have the benefit of all rights, remedies, redress and limitations in respect to Subcontractor and all things done and used by Subcontractor in performance of its Work (as defined in Article 2.0 hereof) which the Client and its agents have against Contractor under the Contract or by law. Any and all decisions by the Client or its agents relative to interpretation of the Contract or any ambiguity or discrepancy therein shall be binding on the Subcontractor to the same extent such are binding on Contractor.

1.3 The intent of the Subcontract Documents is to include all items necessary for the proper execution and completion of the Work (as such term is defined in Article 2.0 hereof). The Subcontract Documents are complementary, and what is required by any one shall be as binding as if required by all with respect to the Work. Work not explicitly covered in the Subcontract Documents shall be performed by Subcontractor so long as it is consistent therewith and is reasonably inferable therefrom as being necessary to produce the intended results. The Contract and this Subcontract shall be interpreted together and in harmony with one another. In the event of conflict between the Contract and the Subcontract, the Contract shall be controlling except with respect to the relationship between Contractor and Subcontractor, which shall be governed by the Subcontract.

1.4 Subcontractor hereby represents and acknowledges that it has reviewed and inspected all of the Subcontract Documents as set forth in Article 1.0 and has compared all documents directly or indirectly relating to the performance of this Subcontract and any and all errors, ambiguities and inconsistencies therein have been reported to the Contractor in writing and resolved to Subcontractor's satisfaction.

**2.0 WORK TO BE PERFORMED:**

2.1 Subcontractor, for the Subcontract Price (as defined in Article 3.0 hereof), shall furnish all supervision and labor, and furnish, supply and install all equipment, materials and supplies and do all things necessary to fully perform and complete that portion of the work provided for in the Contract (hereafter "Work") consisting of: **All Attachments A.1 thru B.1 as referenced under this Subcontract.**

2.2 Subcontractor warrants to Contractor and Client that all Work shall be performed in a neat, skillful, good and workmanlike manner and shall be fit for its intended use both as to workmanship and materials. All materials and equipment furnished by

Subcontractor for incorporation into the Project shall be new and of the best description and quality of their respective kinds, unless otherwise specified and ordered by Contractor in writing. Subcontractor warrants that the materials and equipment furnished and the Work performed will strictly comply with the Contract and this Subcontract, and shall be satisfactory to Client and Contractor.

**3.0     SUBCONTRACT PRICE:** Contractor shall pay to Subcontractor for the strict and satisfactory performance of the Work in conformance with the terms and conditions of this Subcontract the total sum of (see Attachment A.1) or where Subcontractor's compensation or any portion of it is based upon unit price, the compensation to Subcontractor shall be in accordance with the unit price schedule attached hereto and indicated as such (hereafter "Subcontract Price"). The Subcontract Price shall be subject to additions and deductions for changes in the Work as provided for in Article 15.0 hereof and other adjustments as provided for in this Subcontract.

**4.0     CONSIDERATION:** In consideration of the promises, covenants and agreements of Subcontractor herein contained, and the full, faithful and prompt performance of this Subcontract, Contractor agrees to pay and Subcontractor agrees to receive and accept as full compensation for doing all Work and furnishing all materials and equipment contemplated and embraced in this Subcontract, and for all loss or damage arising out of the nature of said Work, or from the action of the elements or from any unforeseen difficulties or obstacles which may arise or be encountered in the performance of the Work, and for all risks of every description connected with the Work, and for all expense incurred by or in consequence of the suspension, interruption or discontinuance of the Work, and for well and faithfully completing the Work and the whole thereof in the manner and according to the requirements and instructions of Contractor and Client or Client's agents in charge of the Work, if any, payment in the amount of the Subcontract Price.

**5.0     PROGRESS AND FINAL PAYMENTS:**

5.1     Subcontractor, upon the request of Contractor, shall, prior to Subcontractor's first application for payment, submit to Contractor a schedule of values allocated to the various portions of the Work, prepared in such form and supported by such data as Contractor may require. The schedule of values shall be subject to the approval of Contractor and shall be in such form as Contractor may require. Subject to subsection 5.3 hereof, the schedule of values shall be used for the evaluation of Subcontractor's application for payment.

5.2     Subcontractor, upon the request of Contractor, and on such date as Contractor shall designate, shall submit to Contractor, in form and content acceptable to Contractor, an itemized application for payment, notarized if required by Contractor, supported by such data substantiating Subcontractor's right to payment as Contractor may require. If Subcontractor fails to timely submit its application for payment in form and content satisfactory to Contractor, Contractor shall delay requesting a progress payment in Contractor's application for payment until such time that Contractor receives a satisfactory application for payment from Subcontractor.

5.3     Within ten (10) days after the date Contractor receives payment from the Client covering Work performed by Subcontractor, Contractor will pay to Subcontractor the amount which the estimate of Client or Contractor shows Subcontractor has earned during the period covered by the application for payment, less such amounts as Contractor shall determine as being properly withheld as allowed under this Article or as provided elsewhere in this Subcontract. Contractor shall reduce each payment to Subcontractor by ten percent (10%) and Contractor will retain and withhold the amount of such reduction which shall be released to Subcontractor only upon satisfaction of the requirements set forth in subsection 5.4 hereof. Any sums which Contractor may receive from Client by reason of depositing security with Client are hereby expressly excluded in computing the aforementioned payments to Subcontractor. The estimates of Client as to the amount of Work done by Subcontractor (or Contractor if Client makes no separate estimate of such Work) shall be binding upon Contractor and Subcontractor and shall conclusively establish the amount of Work performed by Subcontractor. As a condition precedent to receiving partial payments from Contractor for Work performed, Subcontractor shall execute and deliver to Contractor, with its application for payment, a full and complete release of all liens, claims and causes of action Subcontractor may have against Contractor and Client through the date of the execution of said release, save and except those claims specifically listed on said release and described in a manner sufficient for Contractor to identify such claim or claims with certainty. The release shall conform to the requirements of statute, if any.

5.4     Upon complete and satisfactory performance of this Subcontract by Subcontractor and final approval and acceptance of the Work by Client, Contractor will make final payment to Subcontractor of the balance due under this Subcontract within ten (10) days after receipt by Contractor of final payment from Client for such Work provided Subcontractor, upon the request of Contractor, has provided to Contractor (1) an affidavit that all payrolls, bills for material and equipment and other indebtedness connected with the Work for which the Client or his property might in any way be responsible, have been paid or otherwise satisfied; (2) consent of surety, if any, to final payment; (3) other data establishing payment or satisfaction of all such obligations to the extent and in such form as may be required by Client; (4) in form satisfactory to Contractor, a general release in favor of Contractor and the Client; (5) waivers and/or release of liens, notices to withhold or other claims against the land, improvements, or funds involved in the Project in form satisfactory to Contractor from all subcontractors, suppliers and materialmen who have performed work or delivered materials or supplies to the Project, and (6) all other documents required by the Subcontract Documents as a condition to final payment. If any sub-subcontractor, supplier or other person refuses to furnish a release or waiver required by the Client or Contractor, the Subcontractor shall, upon the request of Contractor, furnish a bond satisfactory to the Client and Contractor to indemnify them against any such claim or lien. Should the existence of any unsatisfied or undischarged claim, obligation or lien arising in conjunction with Subcontractor's Work become known after final payment is received from Contractor, Subcontractor shall promptly pay on demand all actual amounts Contractor and/or Client pay in bonding around, satisfying, discharging or defending any such claim, obligation or lien, including all costs and attorney's fees incurred in connection therewith.

5.5     Contractor may withhold from Subcontractor payments otherwise due, in whole or in part, or may nullify, in whole or in part, any approval previously made by Contractor on account of defective materials or defective Work not remedied; liens and/or claims filed or reasonable evidence indicating probability of filing of liens and/or claims (including, without limitation, a claim of lien or stop notice); failure of Subcontractor to timely make the required payments to its Subcontractors or for material, supplies or labor; a reasonable doubt that the Subcontract can be completed for the balance then unpaid; a reasonable belief that the Work will not be completed in accordance with the Work Progress Schedule (as defined in Article 8.0 hereof), incomplete or non-conforming application for payment (if required), Subcontractor's failure to carry out the Work in accordance with the Subcontract Documents, or any other reason set forth in the Subcontract Documents pertaining to the Client's withholding of payments to Contractor. If the foregoing causes are promptly removed or corrected to Contractor's satisfaction, the withheld payments shall be made. If such causes are not promptly removed or corrected, Contractor may rectify the same at Subcontractor's expense including, without limitation, reasonable attorney fees and costs incurred and the cost of procuring a release bond necessary to remove the effect of a lien. No certificates issued or payment made to Subcontractor shall be considered an acceptance of any Work, whether or not defective or improper. Should any claim against Contractor arise after final payment is made, all provisions of Article 11.0 hereof shall apply and be binding on Contractor and Subcontractor.

5.6     Contractor's payment to Subcontractor shall be conditioned upon Contractor's receipt of payment from Client for Work performed by Subcontractor. Contractor shall make payments to Subcontractor within ten (10) days after receipt by Contractor of payment from Client for the Work of Subcontractor for which payment has been made. If, however, Client has not timely paid Contractor all or any portion of amounts due Contractor for Work performed by Subcontractor, and Contractor has initiated efforts to obtain payment from Client (including, but not limited to, litigation, arbitration or other form of alternate dispute resolution), then Contractor's obligation to pay Subcontractor shall be deferred until the first to occur of (i) ten (10) days following receipt of payment by Contractor from Client; or (2) thirty (30) days following the conclusion or failure of such effort. It is expressly agreed that such deferral is a reasonable period of time; provided, however, if, during such deferral period, the statute of limitations for filing a lien is set to expire, then no more than five (5) days prior to the expiration of such statute of limitations, Subcontractor may take the action required in order to preserve its lien rights; and provided further, in no event shall Subcontractor file any lien prior to completion of the work of improvement. In any event, Subcontractor shall not be entitled to any payment until this Subcontract has been properly executed and all documents and information to be furnished by Subcontractor have been supplied to Contractor including, but not limited to, an Unconditional Release of Lien in form required by Contractor or statute as appropriate for any previous payment made to Subcontractor and the Certificate of Insurance required under subsection 10.2 hereof. Subcontractor agrees and covenants that money received for the performance of this Subcontract shall be held in trust and used solely for the benefit of firms supplying labor, materials, supplies, tools, machines, equipment, plant or services exclusively for this Project in connection with this Subcontract and having the right to assert liens or other claims against the land, improvements or funds involved in this Project or against any bond or other security posted by Contractor or Client.

5.7     Contractor is hereby expressly granted the right of set off of sums due to Subcontractor under the provisions of this Subcontract against any obligation that may be due from Subcontractor to Contractor regardless of the source of said obligation. Subcontractor, upon the request of Contractor, shall furnish an affidavit showing the names and addresses of all persons or companies that have furnished labor, materials, equipment or services for the Work and the amount due or to become due to each such person or company. No portion of the Subcontract Price otherwise payable or to be paid to Subcontractor shall be considered actually earned until all such persons or companies are fully paid by Subcontractor.

5.8     Subcontractor warrants that title to all Work, materials and equipment covered by an application for payment will pass to the Client upon the first to occur of either incorporation in the construction or upon the receipt of payment therefor by Subcontractor, free and clear of all liens, claims, security interests or encumbrances and that no Work, materials or equipment covered by an application for payment will have been acquired by the Subcontractor, or by any other person performing the Work at the site or furnishing materials and equipment for the project, subject to an agreement under which an interest therein or an encumbrance thereon is retained by the seller or otherwise imposed by the Subcontractor or such other person.

5.9     Payments may, in the discretion of Contractor, be made in the form of checks payable jointly to Subcontractor and any sub-subcontractor, supplier or person performing labor or services for Subcontractor or any person who has a right of action (or claims to have a right of action) under law against Contractor or its surety. If Subcontractor shall fail to timely pay for any materials, labor and services furnished in connection with the performance of the Work when due, Contractor may pay the amount of such labor, services and materials and deduct the amount thereof from payments due, or to become due, Subcontractor. Subcontractor shall have no recourse against Contractor for payments made by Contractor hereunder.

5.10    Subcontractor shall not be entitled to any interest on retainage or other amounts to be paid to Subcontractor under the terms of this Subcontract except where required by statute and the right to such interest cannot be waived.

6.0     **WORK AND JOBSITE CONDITIONS:** Subcontractor warrants and represents that it has inspected the site of its Work and the conditions affecting the Work including, without limitation, those bearing on transportation, disposal, handling and storage of materials, availability of labor, utilities, roads and uncertainties of weather, river stages, tides or other physical conditions of the site and the type of equipment and facilities needed preliminary to and during the performance of the Work. Subcontractor has satisfied itself as to the surface and subsurface conditions of the site from an inspection including all exploratory work done by Client and/or Contractor, as well as from information presented by the Subcontract Documents. Any failure by Subcontractor to acquaint itself with the available information will not

relieve it from responsibility for any conclusions or interpretations made by Subcontractor on the basis of any information made available by Client and/or Contractor. Subcontractor shall be entitled to an equitable proportionate share of any compensation Contractor receives from Client for changed or differing site conditions which impact Subcontractor's performance of the Work but only to the extent received by Contractor.

**7.0     INDEPENDENT CONTRACTOR:** Subcontractor warrants that it is an independent contractor and shall operate as an independent contractor and not as an agent of Contractor, and shall not represent or hold itself out to be an agent of Contractor. This Subcontract does not create, nor does any course of conduct between Contractor and Subcontractor pursuant to this Subcontract create, any contractual relationship between any parties other than Contractor and Subcontractor. Subcontractor represents that it is fully experienced and properly qualified as an expert to perform the class of Work provided for herein, shall finance its own operations required for the performance of the Work and is properly equipped and organized to handle the Work. Subcontractor by its execution of this Subcontract represents that its entry into this agreement has not been induced either wholly or in part by any promises, representations or statements by Contractor or its agents or representatives other than those representations set forth in this Subcontract.

**8.0     COMMENCEMENT AND PROGRESS OF WORK:**

8.1     Subcontractor shall initiate the Work whenever any or all of the Work becomes available or as otherwise directed by Contractor and shall thereafter proceed and complete performance of the Work promptly, diligently and in such a manner and sequence as to assure the timely completion of other work dependent thereon and to permit completion of the Work within the time provided by the Contract and within the work progress schedule formulated by Contractor for the Project (hereafter "Work Progress Schedule"). Any time specified for completion of the Contract, or time requirement for Subcontractor's Work under the Work Progress Schedule, is a material provision of the Subcontract; time being of the essence of the Subcontract.

8.2     Except as otherwise directed by Contractor, Subcontractor shall, within five (5) days after its execution of this Subcontract, or within such other time as may be specified by Contractor, prepare and submit to Contractor in writing for Contractor's review a proposed schedule, showing the order in which Subcontractor proposes to carry out all major activities and indicating the dates on which the several activities representing the complete performance of the Subcontract (including procurement of materials, plant and equipment) may be started and finished. This schedule shall list the sequence of activities anticipated by Subcontractor and the anticipated duration of each activity. Where Contractor has made available to Subcontractor a Work Progress Schedule for the Project, Subcontractor shall schedule and sequence the Work in an integrated manner with the Work Progress Schedule for the Project.

8.3     Provided Contractor has timely received the Subcontractor's proposed schedule for its performance of the Work (if required), Contractor shall prepare the Work Progress Schedule incorporating Subcontractor's scheduling information to the extent feasible. Should any aspect of the Work Progress Schedule be at variance with the desired sequencing or duration of Subcontractor's Work, Subcontractor shall notify Contractor in writing of such variation within five (5) days of its receipt of the Work Progress Schedule. Thereafter, the parties shall meet in a good faith effort to resolve any scheduling differences. However, Subcontractor shall abide by a final determination made by Contractor, in its sole discretion, with respect to the scheduling of the Work including the sequencing and duration of the Work. Subcontractor's failure to submit its proposed schedule, if and when required, or to notify Contractor in writing of any variation or conflict between Subcontractor's proposed schedule and the Work Progress Schedule shall preclude Subcontractor from receiving either extensions of the time and/or activity completion dates specified in the Work Progress Schedule or an increase in the Subcontract Price. Subcontractor further acknowledges that, as construction progresses, it may be necessary for Contractor to change the sequential order and duration of various activities, including those contemplated by the Subcontract, to reflect unanticipated delays, occurrences and other factors which act to alter the Work Progress Schedule. Contractor may require Subcontractor to prosecute the Work in such sequence as Contractor may reasonably require in order to maintain the progress of other subcontractors and of the Work Progress Schedule. Contractor may, from time to time, revise and update the Work Progress Schedule so as to reflect the actual progress of the Work.

8.4     Subcontractor shall coordinate its Work with that of Contractor and other subcontractors as Contractor may reasonably require. Subcontractor shall at all times furnish and have available such sufficient and satisfactory equipment, materials, supplies and workmen to perform the Work to meet the Work Progress Schedule in the opinion of Contractor. In the event Subcontractor fails to perform the Work in accordance with the Work Progress Schedule or, in order to avoid falling behind the Work Progress schedule, to the extent such failure is not the result of a delay for which Subcontractor is entitled to an extension of time in which to perform the Work under this Article 8.0, Subcontractor, at its own expense, shall provide additional equipment, work force, overtime or additional shifts so as to meet and maintain the Work Progress Schedule. All expenses and damages incurred by the Contractor resulting from the failure of the Subcontractor to meet the Work Progress Schedule, or abide by the Contractor's instructions with regard to said schedule, will be paid by Subcontractor upon Contractor upon demand.

8.5     If Subcontractor shall be delayed in the performance of the Work by any act or neglect of the Client or Architect, or by agents or representatives of either, or by changes ordered in the Work, or by fire, unavoidable casualties, national emergency, adverse weather conditions not reasonably anticipatable, or by any cause other than the intentional interference of Contractor or for reasons beyond Subcontractor's control and without Subcontractor's fault or negligence, Subcontractor shall be entitled, as Subcontractor's exclusive remedy, to an extension of time reasonably necessary to compensate for the time lost due to the delay, but only if Subcontractor shall have notified Contractor in writing of the existence of the delay within forty-eight (48) hours of the occurrence of the event giving rise to the delay, and, only to the extent that an equivalent extension of time is granted to Contractor by Client. Subcontractor shall have the burden of proving the

impact of the delay and justifying the time extension requested. If Subcontractor's performance of its Work is unaffected by a delay incurred by Contractor or another Subcontractor and for which relief is granted to Contractor or another subcontractor, Subcontractor shall not be entitled to claim an extension of time for such delay in order to perform its Work.

8.6     In no event shall Contractor become obligated to pay Subcontractor any amount in excess of the Subcontract Price as a result of delays, interferences, hindrances, inefficiencies or disruptions to Subcontractor's Work, excepting only delays or disruptions for which Contractor, on behalf of Subcontractor, has received from Client an increase in the Contract Price and/or delays, interferences, hindrances, inefficiencies or disruptions resulting from Contractor's intentional interference with Subcontractor's Work. Contractor's exercise of any of its rights under Article 15.0 of this Subcontract, regardless of the extent or number of such changes, or the Client's exercise of any of its remedies of suspension of the Work or Contractor's requirement that Subcontractor correct or re-execute any defective Work, shall not, under any circumstances, be construed as interference with Subcontractor's performance of the Work.

**9.0     PAYMENT OF CHARGES AND TAXES:** The Subcontract Price includes, and Subcontractor shall promptly pay all of its employees and subcontractors all costs of performing its obligations hereunder, including all benefits and all taxes, including payroll, sales or use tax, assessment fees and charges, unemployment insurance, old age benefits, pensions or annuities and all vacation, sickness and other benefits of any kind imposed or required by any government, union requirement or labor agreement to which Contractor is a party, levied, incurred or payable on or in respect to Subcontractor's acts or transactions or things used by it in performing such obligations.

**10.0     INSURANCE:**
     10.1     Upon execution of this Subcontract and, in any event, before commencing the Work, Subcontractor shall procure, and maintain in full force and effect at Subcontractor's expense, so long as may be necessary to fully protect the Client and Contractor and, in any event, at least until the completion and acceptance of Subcontractor's Work as a whole, Worker's Compensation Insurance in accordance with the laws of the state in which the Work is situated; and Employers' Liability Insurance; Commercial (or Comprehensive) General Liability Insurance on an occurrence basis only including, without limitation, completed operations, contractual liability, and Contractors' Protective Liability Insurance; Comprehensive Automobile Liability Insurance covering all owned, non-owned and hired automobiles used in connection with the Work and such other coverage and in the minimum limits as specified in Attachment A.3.

     10.2     Before commencing the Work or ten (10) days after execution of this Subcontract whichever shall first occur, the Subcontractor shall furnish a certificate, satisfactory to Contractor, from each insurance company providing coverage to Subcontractor showing that the insurance coverage required herein is in force, stating policy numbers, dates of expiration and limits of liability thereunder, and further providing that the insurance will not be canceled, modified or changed until the expiration of at least thirty (30) days after written notice of such cancellation, modification or change has been mailed by certified mail return receipt requested to Contractor.

     10.3     The general liability policy and any excess policies shall be endorsed to stipulate that the insurance afforded the additional insured, shall apply as primary insurance and that any other insurance maintained by Client and Contractor shall be in excess only and shall not be called upon to contribute with the insurance of Subcontractor. Contractor, Client and their directors, officers, employees and agents and other persons or entities as Contractor may require shall be named, by endorsement, as additional insureds on each such policy.

     10.4     Subcontractor's insurance shall apply separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the insurer's liability.

     10.5     Contractor expressly reserves the right to modify, in its discretion, the limits stated in Attachment A.3 by providing to Subcontractor thirty (30) days prior written notice of its intent to do so. Subcontractor shall be deemed to accept Contractor's modifications to the limits unless, within such thirty (30) day period, it provides Contractor with its written objection to the new limits. If the objection cannot be resolved to the satisfaction of the Parties, then this Subcontract shall terminate pursuant to Article 16.0.

     10.6     In the event Subcontractor is approved by Contractor (and Client where required by the Contract) to subcontract, assign or hypothecate part of his Work (per Article 14.0, Assignment, hereof) Subcontractor will ensure that his lower tier subcontractors maintain and provide evidence of insurance coverage meeting the same requirements to which Subcontractor is obligated in accordance with the provisions of this Subcontract. This includes, but is not limited to providing coverage for Subcontractor, Contractor, the Client and any other persons or entities as listed in this Article, as well as meeting the requirements of any Owner Controlled Insurance Program (OCIP), and the Prime Contract.

**11.0     LIABILITY FOR INJURY AND DAMAGES:**
     11.1     To the fullest extent permitted by law, Subcontractor shall indemnify, defend (with counsel reasonably satisfactory to Contractor), and save harmless Client and Contractor, as well as any individual and/or entity that Contractor is required by contract to indemnify, defend and/or hold harmless, and their officers, directors, agents and employees, and each of them, (hereafter collectively "Indemnified Parties" and individually "Indemnified Party") from and against any and all suits, actions, legal or administrative proceedings, claims, debts, demands, damages, consequential damages, liabilities, interest, actual attorney's fees, costs and expenses of whatever kind or nature (hereafter "Claims") and whether they may arise before, during or after performance of Subcontractor's Work which are in any manner directly or indirectly caused, occasioned or contributed to, in whole or in part, or claimed to be caused, occasioned, or contributed to, in whole or in part, through any act, omission, fault or negligence whether active or passive of Subcontractor, or anyone acting under its

direction, control, or on its behalf or for which it is legally responsible, in connection with or incident to the Work or arising out of any failure of Subcontractor to perform any of the terms and conditions of this Subcontract; without limiting the generality of the foregoing, the same shall include injury or death to any person or persons (including Subcontractor's employees) and damage to any property, regardless of where located, including the property of Client and Contractor. Subcontractor's obligation to provide a defense for an Indemnified Party shall arise regardless of the merits of the matter and shall continue until a final determination of fault is made. Subcontractor's obligation to indemnify, defend and hold harmless an Indemnified Party shall apply regardless of any allegations of active and/or passive negligent acts or omissions of an Indemnified Party. Subcontractor, however, shall be relieved of and shall have no further obligation to indemnify an Indemnified Party under the Subcontract Documents upon a final determination that a Claim is due to the sole negligence or willful misconduct of that Indemnified Party or such Party's agents or employees. Contractor shall be entitled to recover actual attorney fees and court costs and all other costs, expenses and liabilities incurred by Contractor in an action brought to enforce all or any part of this Article 11.0.

      11.2     Subcontractor shall indemnify and defend and save harmless the Indemnified Parties, and each of them, from and against all claims, royalties, damages, liabilities, costs and expenses of whatever kind or nature (including attorney's fees) in any manner resulting, or claimed to result from any alleged infringement of any letters patent or patent rights by reason of the Work or materials or processes used by Subcontractor, its lower tier subcontractors and/or suppliers or others acting on its behalf, in the performance of the Work.

      11.3     The indemnification provisions of Articles 11.0 and 12.0 shall survive termination of this Subcontract and shall extend to claims occurring after termination of this Subcontract as well as while it is in force.

**12.0    TIME IS OF THE ESSENCE:** Time is of the essence in the performance by Subcontractor of its obligation hereunder. In the event any acts or omissions by or of Subcontractor delay Contractor in the performance of the Contract and result in Contractor being subjected to any penalties or liabilities under the Contract, Subcontractor agrees to indemnify, defend and hold Contractor harmless against any liability for and to promptly pay to Contractor any penalties or liabilities so incurred and such other or additional damages, including but not limited to attorneys' fees, as Contractor may sustain by reason of Subcontractor's delay or failure to perform. Performance under this Subcontract shall be subject to such extensions of time as are deemed justifiable for delays or failures to perform due to strikes, lockouts, acts of God or war, or to the extent allowed by Client in accordance with the Contract.

**13.0    FORCE MAJEURE:**
      13.1     "Force Majeure" as used in this Article shall mean an act of God, act of public enemy, war, lightning, fire, flood, explosion, earthquake, failure to timely receive necessary governmental approvals, government restraint, and any other cause, whether of the kind specifically enumerated above or otherwise, other than financial inability, which is not reasonably within the control of the party claiming suspension.

      13.2     If Subcontractor is rendered unable, wholly or in part, by Force Majeure to carry out its obligations under this Subcontract, Subcontractor shall give Contractor prompt written notice of the Force Majeure event with reasonably full particulars concerning it; thereupon, the performance of Work by Subcontractor, so far as they were affected by the Force Majeure event, shall be subject to such extensions of time only to the extent that Contractor shall be entitled to and shall be allowed an extension of time on account thereof by Client. Subcontractor shall act diligently to alleviate the impact of a Force Majeure to the extent possible.

**14.0    ASSIGNMENT:** Any subcontracting, assignment or hypothecation of this Subcontract or any of the Work or any amount due or payable hereunder without the prior written consent of Contractor (and Client where required by the Contract) shall be void. Additionally, it shall be grounds for termination of this Subcontract by Contractor, including termination of the Subcontractor's right to any further payment, and authorization of Contractor to withhold all monies due or to become due to Subcontractor in accordance with Article 5.0 hereof.

**15.0    CHANGES AND EXTRA WORK:**
      15.1     Without invalidating this Subcontract and without notice to any surety, Contractor may, at any time or from time to time, order additions, deletions or revisions in the Work to be performed by Subcontractor. In the event Client shall order changes in the Work or order additional Work, adjustment in compensation due under this Subcontract and/or extensions of time in which Subcontractor will be required to perform its Work, will be made only and to the extent a commensurate adjustment in compensation or time is made by Client to Contractor for the account of Subcontractor. The adjustment in compensation to Subcontractor shall, in such circumstances, be limited in the same manner and to the appropriate proportionate extent as Contractor's compensation under the Contract is adjusted by Client for the account of Subcontractor.

      15.2     In the event any condition beyond the control of either party hereto shall arise and, by reason thereof, claims shall be made by the Subcontractor for adjustment in compensation due under this Subcontract or an extension of time in which to perform its Work, then in any such event, compensation and/or the time in which Subcontractor is required to perform its Work, shall be considered for adjustment only if Subcontractor has given written notice of its claim to Contractor sufficiently in advance of the time Contractor is required to submit such a claim to the Client (but in no event greater than forty-eight (48) hours from the occurrence of the event giving rise to the claim) so as to allow Contractor adequate time to prepare and submit to the Client the claim on behalf of Subcontractor. In the event Contractor is allowed an adjustment by Client by reason of such event, the adjustment in the compensation to Subcontractor shall be limited in the same manner and to the appropriate proportionate extent as Contractor's compensation under the Contract as adjusted by Client for the

account of Subcontractor. Any extension of time in which Subcontractor shall be required to perform its Work granted by Client shall be commensurate with the time extension granted to Contractor by Client for the Subcontractor's Work.

15.3    In addition to changes made or additional Work ordered by Client under the Contract, Contractor reserves the right to make any change, including additions or omissions, in the Work to be performed by Subcontractor under this Subcontract. If any such change by Contractor materially affects the cost or time of performance of the Work and notice of a claim for additional compensation therefore is given to Contractor by Subcontractor within six (6) days of receipt by Subcontractor of Contractor's written change order, an equitable adjustment therefor shall be agreed upon in writing by the parties hereto. No claim by Subcontractor for additional compensation, either on account of extra labor or materials furnished, changes or otherwise shall be made or paid unless the same are furnished under a written order signed by Contractor prior to the furnishing of same and unless within six (6) days after receipt of such written order Subcontractor has given written notice of its claim for additional compensation.

15.4    Upon the request of Contractor, Subcontractor shall promptly, or within the time specified by Contractor, submit to Contractor a detailed estimate of the cost or value of such change including quantities, unit prices, labor rates, manufacturers' and suppliers' quotations and all other information requested by Contractor for a complete analysis of the proposal. If the proposed change will affect the length of time the Subcontractor requires to complete Subcontractor's Work, the Subcontractor shall set forth the amount of any time increase, as well as the scheduling considerations, if any, applicable to such change, in Subcontractor's proposal. If Subcontractor fails to submit proposed cost adjustments to the Subcontract Price and/or detail adjustments to the Subcontractor's work schedule accurately and promptly or within any time specified in Contractor's request for such information, or in Contractor's discretion to proceed with the work, Contractor shall be entitled to estimate the effect of proposed changes on the Subcontractor's Work in finalizing change orders with the Client. Any adjustment of the Subcontract Price or Work Progress Schedule resulting from Contractor's estimate shall be binding on the Subcontractor.

15.5    Subcontractor shall not be entitled to any extensions of time for performance of the Work, or extra, changed or additional work, save and except only to the same extent that Contractor shall be entitled to and shall be allowed an extension of time on account thereof by Client.

15.6    Contractor and Subcontractor agree that any extra, changed or additional work performed by Subcontractor shall be performed pursuant to and in accordance with all of the terms and conditions of this Subcontract.

15.7    Subject to the limitations stated in this Article, if, pursuant to this Article, there is an addition, deletion, revision or other modification to the Work and Contractor and Subcontractor are unable to agree on an adjustment to the Subcontract Price or method for revising the Subcontract Price (including, but not limited to, unit price or force account rates) and/or the time impact; or if a dispute arises between Contractor and Subcontractor as to whether work performed by Subcontractor is included as part of its scope of Work or constitutes extra or additional work, then Subcontractor shall timely perform such work so as not to delay the Work Progress Schedule and the dispute shall be resolved pursuant to Article 23.0.

16.0    **TERMINATION OR SUSPENSION OF WORK:**
16.1    If Client for any reason (including, but not limited to, Client's convenience) terminates or suspends or substantially changes the scope of the Work, or any portion of it under the Contract, Contractor may order Subcontractor to terminate or suspend its performance of the Work, or any portion of it and Contractor shall not be liable in any way for any such termination or suspension provided, however, that in the event that Contractor is compensated by Client by reason of such termination or suspension, then in such event Contractor shall pay to Subcontractor an equitable portion of said sum based upon the Work performed.

16.2    In addition to Contractor's right to terminate or suspend the Work under Article 16.1 hereof, Contractor may, at any time and for any reason, or no reason, terminate or suspend performance of the Work by Subcontractor at Contractor's convenience by service of written notice upon Subcontractor. Upon receipt of such notice, Subcontractor shall, unless the notice directs otherwise, immediately discontinue the work and placing of orders for materials, facilities and supplies in connection with the performance of this Subcontract, and shall, unless otherwise directed, make every effort to procure cancellation of all existing orders or contracts upon terms satisfactory to Contractor, or at the option of Contractor, give Contractor the right to assume those obligations directly, including all benefits to be derived therefrom. Subcontractor shall thereafter do only such work as may be necessary to preserve and protect the work already in progress and to protect material and equipment on the job site or in transit thereto.

16.2.1    Upon such termination, Subcontractor shall be entitled to payment in accordance with Article 5.0 hereof, only as follows: (1) payment shall be made to Subcontractor commensurate with the percentage of Work completed through the date of termination (but in any event no more than ten percent (10%) additional to the actual cost of said percentage of Work completed); plus (2) such other actual and unavoidable termination costs incurred by Subcontractor and approved in advance by Contractor.

16.3    Termination costs to be paid to Subcontractor shall be subject to Contractor's right to withhold as set forth in Article 5.0 hereof.

**17.0 BOND:** Concurrent with the execution of this Subcontract, Subcontractor, at his expense, shall obtain and furnish surety bonds in such form as provided by Contractor or in such form as may be acceptable to Contractor in its sole discretion. Surety bonds shall be in the amount of one hundred percent (100%) of the Subcontract price guaranteeing full performance of this Subcontract and that Subcontractor will promptly and fully pay for all work, labor and materials and other charges or costs in connection with the Work. The surety underwriting such bonds shall be a corporate surety listed with the U.S. Department of the Treasury, licensed in the state where the Work is to be performed and shall conform to such other and further restrictions and conditions as Contractor shall require. No change, alteration or modification in or deviation from this Subcontract, its terms, conditions, plans or specifications, or in the manner, time or amount of payment as provided herein, whether or not made in the manner as herein provided, shall release or exonerate, in whole or in part, any surety on any bond given in connection with this Subcontract. In the event of any default by Subcontractor, no surety on any performance bond given in connection with this Subcontract shall, without the prior written consent of Contractor (which consent shall not be unreasonably withheld or delayed), have any right to complete Subcontractor's Work hereunder or have any right to hire any other person, partnership or corporation to complete or in any way perform Subcontractor's Work. The Contractor's right of approval hereunder is intended only to insure the proper performance of the Subcontract Work and is not intended to interfere with any rights the surety might have under the bond or by operation of law. The Surety under any performance bond provided to Contractor under this provision shall not be relieved of any responsibility under said bond to Contractor if the Subcontractor shall become insolvent or shall make an assignment for the benefit of creditors or be subject to any proceeding in bankruptcy. Subcontractor's failure to comply with any of the terms of this Article shall be deemed a material breach of this Subcontract.

**18.0 RESPONSIBILITY FOR WORK:** Subcontractor shall be responsible for and shall bear any loss of or damage to the Work and all materials, supplies and equipment until final approval and acceptance thereof by Client, except where such loss or damage results from the direct and sole negligence of Contractor or its agents or employees. Subcontractor shall be responsible to Contractor for any damage to the Work or property of Client, Contractor or others caused by any act or omission of Subcontractor or anyone acting for or on its behalf.

**19.0 LABOR CONDITIONS:** Subcontractor shall not use any workers, materials, or methods which may cause strikes or labor disturbances and Subcontractor shall comply with all labor laws and regulations applicable to the Work hereunder as are now or may hereafter be in force and effect. Subcontractor shall, to the extent permissible under federal and any applicable state laws, comply with and be bound by such terms and conditions of the labor agreements to which Contractor is subject (described below) as are applicable to the Work to be done hereunder, including, without limitation, any arbitration provision (or other dispute resolution provisions contained therein) or the terms and provisions providing for the assignment of work or the settlement of jurisdictional disputes or the payment of contributions to union trust funds or the posting of all surety bonds required by such labor agreements. Subcontractor shall be required to man its Work so as to maintain the Work Progress Schedule regardless of any labor activity including strikes, picketing or other labor disturbances. Subcontractor shall conform to prevailing wage and certified payroll requirements applicable to the Project, if any. Immediately upon the request of Contractor, Subcontractor shall remove from the Project any employee whom Contractor determines to be incompetent, undesirable or presents a threat of risk or harm to others. Subcontractor agrees that if any portion of the work covered hereby is further subcontracted, such further subcontractor shall be bound by and observe the provisions of this Article 19.0 to the same extent as herein required of Subcontractor, and that a copy of this Article imposing such obligations upon the further Subcontractor shall be included in any further Subcontract. Contractor is signatory to the following construction master labor agreements (which agreements are available for review by the Subcontractor during normal business hours at Contractor's office) with the following labor unions: **The Labor Unions Assigned to this Project.**

**20.0 INSPECTION AND CORRECTION:** The Work shall at all times be subject to inspection by Client and Contractor or their designated agents or representatives. In the event that any part of the Work or any material is determined by Client or Contractor to be improper, defective or otherwise fails to conform to the Subcontract Documents, either during the performance of the Work or during any guarantee period provided in the Contract or if there be none, then for a period of one (1) year from completion and acceptance of the Project by Client, Subcontractor shall within forty-eight (48) hours of notification by Contractor to do so, proceed to remove, dispose of and replace the same, and make good all work damaged or destroyed by or as a result of such defective, improper or nonconforming Work or materials or by the taking down, removal or replacement thereof, at its own cost and expense. If Subcontractor shall fail within such forty-eight (48) hour period to replace or correct improper, defective or non-conforming Work or material promptly and completely, Contractor, at its option, may replace or correct the same. Subcontractor agrees to pay to Contractor all costs, expenses (including actual attorney's fees), liabilities and consequential damages incurred by Contractor in connection with said replacements or corrections, whether said replacements or corrections are removed, disposed of and replaced by Subcontractor or Contractor or by others. Subcontractor shall execute any special guarantees as provided by the terms of the Subcontract Documents prior to final payment.

**21.0 CLEAN-UP:** Subcontractor shall carry on its operations so that the premises shall at all times be clean, orderly and free from debris. Upon completion of its Work, Subcontractor shall remove all equipment and unused materials from the site, clean up all refuse and debris, and leave the site of the Work clean, orderly and in good condition. If Subcontractor fails to keep the premises clean in accordance with the requirements of this Article, Contractor may clean, or cause the premises to be cleaned by others and shall be reimbursed by Subcontractor for all costs and expenses incurred in doing so plus a reasonable amount for overhead and profit.

**22.0 DEFAULT BY SUBCONTRACTOR:**

22.1 Immediately upon the request of Contractor, Subcontractor shall provide Contractor with assurances of its ability to perform the conditions hereof, or, in lieu thereof, statements of credit worthiness, either of which shall be subject to the sole satisfaction of

Contractor. If, upon the request of Contractor, Subcontractor fails to commence promptly or to prosecute the Work required hereunder diligently; or to make the progress required by Client or Contractor; or fails to provide Contractor with satisfactory assurances of its ability to perform or statements of credit worthiness; or shall become insolvent, shall make an assignment for the benefit of creditors or be subject to any proceeding in bankruptcy; or shall become involved in labor difficulties; or fails to provide bonds and/or maintain policies of insurance (or proof thereof) as required in this Subcontract; or fails to timely initiate appropriate measures for the correction of faulty Work; or fails to pay payroll when due or payments to union trust funds in a timely manner; or fails to timely pay or discharge in full or provide adequate security for the payment of all claims of any persons, or entities furnishing or claiming to have furnished labor, materials, equipment or incidentals used in, upon or for the Work, whether or not, as to any such claim, a lien or right of enforcement is established or attempted to be established upon or against the work, the real property upon which the work is situated, upon any bond furnished by Contractor or upon any monies payable to Contractor by Client; or fails to pay any sums owed Subcontractor's lower tier subcontractors or suppliers for the Project when due; or materially fails to perform any other obligation of Subcontractor under the Subcontract, Subcontractor shall be deemed to be in default of this Subcontract and Contractor shall have the right, if it so elects and without prejudice to any other rights it may have, by giving twenty-four (24) hours written notice to Subcontractor of its election to take over all Work, or any part thereof, and all tools, equipment, materials and supplies of Subcontractor at the jobsite and finish the Work by whatever method it deems expedient. If the Work is public in nature Contractor shall also give notice and proceed as required by statute. Subcontractor shall not be entitled to receive any further payment until the Work is finished. If the unpaid balance of the Subcontract price hereunder exceeds Contractor's expense of finishing the Work, including all legal and court fees and expense incurred in connection therewith, such excess shall be paid to Subcontractor. If such expense exceeds such unpaid balance, Subcontractor shall promptly pay the difference to Contractor on demand. The expense of completion, including all legal and court fees and expenses incurred in connection therewith, shall be certified to by Contractor and shall be binding on the parties.

22.1.1   In the event Subcontractor files a Chapter 7, 11 or 13 Bankruptcy, the Parties agree that any delay attendant to the assumption or rejection of this Subcontract by a trustee or a debtor-in-possession will be prejudicial to Contractor. Consequently, Subcontractor hereby stipulates, in order to minimize delay to the Project and to avoid potential damages or other prejudice to Contractor, to a notice period of ten (10) calendar days for Contractor's motion to require Subcontractor to elect to assume or reject this Subcontract.

22.2   If Subcontractor fails to furnish or supply sufficient skilled workmen, suitable materials, supplies, or adequate equipment, Contractor shall have the right, in addition and without prejudice to the exercise by Contractor of any or all of the remedies afforded under this Subcontract to Contractor or any other remedies allowed by law or in equity for the same default, to expedite deliveries of and to procure and furnish such labor, materials, supplies or equipment and charge the entire cost of expediting, procuring or furnishing the same, including Contractor's overhead, profit and all legal and court fees and expenses incurred in connection therewith, to Subcontractor and deduct such amounts from any amount payable to Subcontractor, and Subcontractor agrees to immediately pay Contractor all such costs and expenses.

## 23.0   DISPUTE RESOLUTION:
23.1   Any dispute resolution procedure in the Contract shall be deemed incorporated into this Subcontract, and shall apply to any disputes arising hereunder, except disputes not involving the acts, omissions or otherwise the responsibility of the Client under the Contract, those which have been waived by the making or acceptance of final payment, and questions regarding the licensure of the Subcontractor. Subject to compliance with all applicable laws, including but not limited to those relating to false claims, dispute and claim certifications, and cost and pricing data requirements, Contractor's sole obligation is to present any timely-filed claims by Subcontractor to Client under such procedure and, subject to the other provisions of this Subcontract, to pay to Subcontractor the proportionate part of any sums paid by the Client to which Subcontractor is entitled.

23.2   Subject to Contract disputes under 23.1, and as for disputes not involving the acts, omissions or otherwise the responsibility of the Client under the Contract, within three (3) working days upon notification by the Subcontractor of a dispute, the Contractor and Subcontractor shall meet to informally resolve such dispute. In the event that no resolution is achieved, the parties, prior to the initiation of any action or proceeding under this section, shall make a good faith effort to resolve the dispute by negotiation between representatives with decision-making power, who, to the extent possible, shall not have had substantive involvement in the matters of the dispute, unless the parties otherwise agree. To facilitate the negotiation, the Parties shall submit the matter to non-binding mediation. Either Party may demand mediation by serving a written notice stating the essential nature of the dispute, the amount of time or money claimed, and requiring that the mediation proceed with thirty (30) days of service of notice. The mediation shall be administered by the American Arbitration Association or by such other person or persons as the parties may agree upon. No action may be initiated unless the mediation does not occur within sixty (60) days after service of such notice, the mediation occurred but did not resolve the dispute, or a statute of limitation would lapse if suit was not filed prior to sixty (60) days after service of notice.

23.3   The Parties shall submit any and all unresolved disputes that are not resolved through informal means under Article 23.2 above to binding arbitration in accordance with the Construction Industry Rules of the American Arbitration Association then in effect. A demand for arbitration shall be made within a reasonable time after the unsuccessful completion of dispute resolution through informal means, but in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim or dispute or other matter in question would be barred by the applicable statute of limitation. The award rendered by the arbitrator(s) shall be final and judgement may be entered upon it in accordance with applicable law in any court having jurisdiction.

23.4     Unless otherwise agreed in writing, Subcontractor shall carry on the work and maintain the Work Progress Schedule pending arbitration, and, if so, Contractor shall continue to make undisputed payments in accordance with this Subcontract.

23.5     To the extent not prohibited by their contracts with others, the claims and disputes of Client, Contractor, Subcontractor and other subcontractors, designers, suppliers and/or materialmen involving a common question of fact or law shall be heard by the same arbitrator(s) in a single proceeding. In this event, it shall be the responsibility of Subcontractor to prepare and present Contractor's case, subject to the reasonable direction of Contractor, to the extent the proceedings are related to this Subcontract. Should Contractor enter into arbitration with the Client or others regarding matters relating to this Subcontract, Subcontractor shall be bound by the result of the arbitration to the same degree as Contractor.

23.6     This Article shall not be deemed a limitation of any rights or remedies which Contractor and/or Subcontractor may have under any federal or state mechanics' lien laws, federal or state Miller Act or Little Miller Act laws, or under any applicable labor and material payments bonds unless such rights or remedies are expressly waived by it.

23.7     The prevailing party in any dispute arising out of or relating to this Agreement or its breach that is resolved by a binding dispute resolution procedure under this Article shall be entitled to recover from the other party reasonable attorneys' fees, costs and expenses incurred by the prevailing party in connection with such dispute resolution process.

## 24.0    SAFETY:

24.1     Subcontractor is required to perform the Work under this Subcontract in a safe and reasonable manner. Subcontractor shall seek to avoid injury, loss or damage to persons, including the Subcontractor's employees and anyone acting under its direction and control, or on its behalf, or for whom it is legally responsible, or property by taking reasonable steps to protect: employees and other persons at the site; materials and equipment stored at the site or at offsite locations for use in performance of the Work; and all property and structures located at the Work site and adjacent to Work areas, whether or not said property or structures are part of the Project or involved in the Work.

24.2     Subcontractor shall give all required notices and comply with all applicable rules, regulations, orders and other lawful requirements established to prevent injury, loss or damage to persons or property.

24.3     Subcontractor shall implement appropriate safety measures pertaining to the Subcontract Work and the Project, including establishing safety rules, posting appropriate warnings and notices, erecting safety barriers, and establishing proper notice procedures to protect persons and property at the site and adjacent to the site from injury, loss, or damage.

24.4     Subcontractor shall exercise extreme care in carrying out any of the Subcontract Work, which involves explosive or other dangerous methods of construction or hazardous procedures, materials or equipment. Subcontractor shall use properly qualified individuals or entities to carry out the Subcontract Work in a safe and reasonable manner so as to reduce the risk of bodily injury or property damage.

24.5     Subcontractor is required to designate an individual at the site in the employ of the Subcontractor who shall act as the Subcontractor's designated safety representative with a duty to prevent accidents. Unless otherwise identified by the Subcontractor in writing to the Contractor, the designated safety representative shall be the Subcontractor's project superintendent.

24.6     Subcontractor has an affirmative duty not to overload the structures or conditions at the site and shall take reasonable steps not to load any part of the structures or site so as to give rise to an unsafe condition or create an unreasonable risk of bodily injury or property damage. Subcontractor shall give prompt written notice to the Contractor of any accident involving bodily injury requiring a physician's care, any property damage exceeding five hundred dollars ($500.00) in value, or any failure that could have resulted in serious bodily injury, whether or not such an injury was sustained.

24.7     Prevention of accidents at the site is the responsibility of the Contractor, Subcontractor, and all other subcontractors, persons and entities at the site. Establishment of a safety program by the Contractor shall not relieve the Subcontractor or other parties of their safety responsibilities. Subcontractor shall establish its own safety program implementing safety measures, policies and standards conforming to those required or recommended by governmental and quasi-governmental authorities having jurisdiction and by the Contractor and Client, including, but not limited to, requirements imposed by the Subcontract. Subcontractor shall comply with the reasonable recommendations of insurance companies having an interest in the Project, and shall stop any part of the Work that the Contractor deems unsafe until corrective measures satisfactory to the Contractor have been taken. Contractor's failure to stop the Subcontractor's unsafe practices shall not relieve Subcontractor of the responsibility therefore. Subcontractor shall notify the Contractor immediately following an accident and promptly confirm the notice in writing. A detailed written report shall be furnished if requested by the Contractor. Subcontractor shall indemnify, defend and hold Contractor harmless to the extent that fines or penalties are caused by its failure to comply with applicable safety requirements.

## 25.0    HAZARDOUS MATERIALS:

25.1     When hazardous or toxic materials or substances, as defined by any and all applicable federal, state, county and municipal hazardous materials laws, ordinances, statutes, rules and regulations, and rulings or directives of any agencies having jurisdiction, are known, assumed or suspected to exist at a site, Subcontractor shall take appropriate precautions to protect the health and safety of

Subcontractor's personnel at the site, including anyone acting under its direction or control, anyone acting on its behalf, or anyone for whom it is legally responsible, to comply with applicable laws and regulations, and to follow procedures that Subcontractor deems prudent to minimize physical risks to employees and the public. Contractor shall inform Subcontractor of any hazardous or toxic materials or substances, as defined above, known by Contractor to exist at the Project site where Subcontractor is performing its Work.

25.2    If during performance of its Work Subcontractor discovers the existence of unanticipated toxic or hazardous materials or substances as defined under this Article, Subcontractor shall, and without liability therefor, suspend further Work on the Project and shall notify Contractor immediately of Subcontractor's decision and its reasons, with particularity, for suspension of the Work.

25.3    Where hazardous or toxic materials or substances, as defined under this Article, are introduced on to the Project site by Subcontractor, or Subcontractor causes an unlawful condition as related to any such hazardous or toxic materials or substances not introduced to the Project site by Subcontractor, and any damage, injuries, fines, penalties or other consequences result from Subcontractor's negligence in connection with the above, then Subcontractor agrees to indemnify, defend and hold harmless Contractor from any and all liability, damages, penalties and other costs, including attorneys' fees, as Contractor may sustain as a result of Subcontractor's negligence.

25.4    To the extent that the Contractor has rights or obligations under the Contract or as required by any and all applicable federal, state, county, and municipal hazardous materials laws, ordinances, statutes, rules and regulations, and rulings or directives of any agencies having jurisdiction, the Subcontractor shall have those same rights or obligations.

25.5    This Article 25.0 shall survive termination of this Subcontract.

**26.0    DESIGN DELEGATION:**
26.1    If this Subcontract (1) specifically requires Subcontractor to provide design services and (2) specifies all design and performance criteria, Subcontractor shall provide those design services necessary to satisfactorily complete the Work. Design services provided by Subcontractor shall be procured from licensed design professionals retained by Subcontractor as permitted by the law of the place where the Project is located ("Designer"). Designer's signature and seal shall appear on all drawings, calculations, specifications, certifications, shop drawings and other submittals prepared by Designer. Shop drawings and other submittals related to the Work designed or certified by Designer, if prepared by others, shall bear Subcontractor's and Designer's written approvals when submitted to Contractor. Contractor shall be entitled to rely on the adequacy, accuracy and completeness of the services, certifications or approvals performed by Designer.

26.2    If Designer is an independent professional, the design services shall be procured pursuant to a separate agreement between Subcontractor and Designer. The Subcontractor-Designer agreement shall not provide for any limitation of liability or exclusion from participation in the multiparty proceedings requirement in Article 23 of this Subcontract. Subcontractor shall notify Contractor in writing if it intends to change Designer. Subcontractor shall be responsible for conformance of its design with the information given and the design concept expressed in this Subcontract.

26.3    Subcontractor shall not be required to provide design services in violation of any applicable law.

**27.0    SEVERABILITY:** To the best knowledge and belief of the parties, this Subcontract now contains no provision that is contrary to federal, state or local law or any ruling or regulation of a federal, state, or local agency. In the event that any provision of this Subcontract shall at any time contravene in whole or in part any applicable federal, state, or local law, ruling or regulation, then such provision shall remain in effect only to the extent permitted, and the remaining provisions hereof shall remain in full force and effect.

**28.0    LAWS AND REGULATIONS:** Subcontractor, its employees and representatives shall at all times comply with all applicable laws, ordinances, statutes, rules and regulations, federal, state, county and municipal, and rulings or directives of any agencies having jurisdiction including, without limitation, those relating to wages (including, if required, the payment of prevailing wages and/or the timely submission of certified payrolls), hours, safety, environment, hazardous materials, equal employment opportunity and working conditions or which pertain in any way to the scope of work to be performed by Subcontractor. Subcontractor shall procure and pay for all permits, licenses and inspections required by any governmental authority for any part of the Work hereunder and shall furnish any bonds, security or deposits required by such authority to permit performance of the Work.

**29.0    EQUAL OPPORTUNITY:** Subcontractor will comply with all provisions of Executive Order No. 11246, of September 24, 1965, or as amended or superseded, and of the rules, regulations and relevant orders of the Secretary of Labor and other rules and regulations as provided by federal, state, or municipal law. The Subcontractor shall furnish all information and reports as may be required and will permit access to its books, records, and accounts by Contractor, governmental agencies and Secretary of Labor for the purpose of investigating compliance with such rules, regulations and relevant orders.

**30.0    LEGAL REMEDIES:** Either party hereto shall be entitled to all remedies afforded by law or in equity to enforce their respective rights under this Subcontract. No right or remedy in the Subcontract is intended to be exclusive of any other right or remedy, but every such right or remedy shall be cumulative and shall be in addition to and not a limitation of any duties, obligations, rights and remedies otherwise imposed or available by law, in equity or in the Subcontract. In the event the parties become involved in litigation or arbitration with each

other arising out of this Subcontract or other performance thereof in which the services of an attorney or other expert are reasonably required, the prevailing party shall be fully compensated for the cost of its participation in such proceedings, including the cost incurred for attorneys' fees and experts' fees. Unless judgment goes by default, the attorneys' fee award shall not be computed in accordance with any court schedule, but shall be such as to fully reimburse all attorneys' fees actually incurred in good faith, regardless of the court schedule, and experts' fees paid or incurred in good faith. In the case of a dispute under the Contract dispute resolution provisions, Subcontractor shall be entitled to such attorneys' fees and other costs as may be provided for under the Contract.

**31.0    GOVERNING LAW:** It is understood and agreed that each and every provision of this Subcontract, including any alleged breach thereof, shall be interpreted in accordance with the laws of the State where the Project is located.

**32.0    TAX LEVIES:** Contractor may, in its absolute discretion, pay directly to taxing authorities any sums otherwise due Subcontractor and not subject to set-off under Article 5.0 hereof, upon receipt of a tax levy from such taxing authority.

**33.0    SUBCONTRACTOR COMMUNICATIONS:** Subcontractor shall not communicate directly with Client or design professionals not under contract to Subcontractor. All communications to be addressed to Client or design professionals not under contract to subcontractor shall be through Contractor only.

**34.0    MISCELLANEOUS:** (a) As used in this Subcontract, the singular includes the plural; the masculine includes the feminine and neuter; the word "law" includes federal, state and municipal laws, ordinances, statutes, rules and regulations and administrative or judicial rules, regulations or orders; (b) If more than one person or entity is named herein as Subcontractor, their obligations shall be joint and several; (c) Time is of the essence; (d) The parties and their respective assigns, legal representatives and other successors in interest will be bound hereby.

**35.0    ENTIRE SUBCONTRACT:** This Subcontract contains all covenants, stipulations and provisions agreed upon by the parties. No agent of either party has authority to make and the parties shall not be bound by or liable for any statement, representation, promise or agreement not set forth herein. No changes, amendments or modifications of the terms hereof shall be valid unless reduced to writing and signed by the parties.

**IN WITNESS WHEREOF,** the parties hereto have executed this Subcontract the day and year first hereinabove written.

**K.G. INDUSTRIES, INC.**
**SUBCONTRACTOR**

By: _____

Title: _____Secretary_____

Name: (Type) ___C. J. Kothari___

Date Signed: ___9 | 21 | 05___

☒ Corporation ☐ Partnership ☐ Proprietorship

Subcontractor's State License No. ___N A___

Date of Expiration ___N A___

Federal I.D. No. _____
K. G. Industries, Inc.
Fed. I.D. 11-2436360

**GRANITE HALMAR CONSTRUCTION COMPANY, INC.**
**CONTRACTOR**

By: _____

Title: _____Regional Manager_____

Name: (Type) ___Eugene F. Kelley___

Date Signed: ___9/28/05___

# ATTACHMENT A.1

**Design and Construction of a Bus Depot and Central Maintenance Facility at Grand Avenue, Contract Number C-40418, in the Borough of Queens**

K.G. Industries, Inc.
27-08 42nd Road
Long Island City, New York 11101
PH (718) 433-2211, FAX (718) 433-2200

## WORK TO BE PERFORMED:

| Item No. | Cost Code | Description | Quantity | U.M. | Unit Price | Total |
|---|---|---|---|---|---|---|
| | | **DIVISION 7 – Thermal and Moisture Protection** | | | | |
| 1 | 599062 | Per Contract Specification Section 7B -- Adhered EPDM Roofing and the Contract Documents and Drawings dated 2/21/05, furnish and install a fully adhered Sure-Seal Black EPDM Roof System (or Client approved equal) over mechanically fastened Tapered Polyiso Insulation over Metal Deck.  Includes all required warranties per the Contract | 1.00 | LS | $ 1,558,215.00 | $1,558,215.00 |
| 2 | 599063 | Per Contract Specification Section 7LL – Standing Seam Roof and 7G – Sheet Metal Flashing (as applicable), and the Contract Documents and Drawings dated 2/21/05, furnish and install the Standing Seam Metal Roofing.  Includes all required warranties per the Contract. | 1.00 | LS | $ 28,250.00 | $28,250.00 |
| 3 | 599064 | Per Contract Specification Sections 7A -- Membrane Waterproofing, 7M -- Sheet Waterproofing and the Contract Documents and Drawings dated 2/21/05, furnish and install a Self Adhered Rubberized Asphalt Sheet Membrane Waterproofing System of Carlisle SynTec (or Client approved equal) and all warranties per the Contract. | 1.00 | LS | $ 215,535.00 | $215,535.00 |
| 4 | 175401 | 100% Payment and Performance Bond | 1.00 | LS | $48,000.00 | $48,000.00 |
| | | | **TOTAL:** | | | **$1,850,000.00** |

# ATTACHMENT A.2

**SPECIAL PROVISIONS:**

1) **Subcontractor's lump sum amounts shown above in Attachment A.1 include, but are not limited to, the following for the Work covered under this Subcontract:**

   a) All labor, materials, equipment, quality control, warranties, manufacturer warranties, drawings, testing, samples, permits, submittals and certifications necessary to complete the above listed items of Work in Attachment A.1 and as outlined in the Contract Plans, Specifications and Drawings, including the Supplemental Special Conditions, the Division 1-General Requirements, associated Addendums #1 thru #10, and the Detailed Program of Facility Requirements. Subcontractor shall be obligated to Contractor to no less extent than Contractor is to Client for the Work under this Subcontract.

   b) Subcontractor's Work will be coordinated with Contractor and with that of other subcontractors for the Work required for and covered under this Subcontract and shall be performed in accordance with Contractor's Project Schedule. Within two weeks of Subcontractor's notice-to-proceed date, Subcontractor may be required to submit a detailed progress schedule for review by Contractor. The schedule will contain similar information as required by Contractor's schedule for Client, including, but not limited to, milestone dates, AS, AF, ES, EF dates, printed reports, etc. This schedule will be updated monthly and submitted to Contractor. In addition, a three-week bar chart shall be submitted weekly.

   c) All mobilizations and demobilizations, including the capacity of Subcontractor to load and unload its own equipment and materials to and from the Project and any transportation charges.

   d) All required unloading, storage and protection of Subcontractor's materials and equipment at the jobsite, including replacement of Subcontractor's lost, stolen or damaged materials and/ or equipment. Subcontractor shall coordinate and accept delivery of all materials and equipment delivered to the site, plus maintain and store such materials properly until completion of installation and final acceptance by the Client. Subcontractor is required to order, verify, unload and protect all material deliveries.

   e) Repair of any damage to existing or adjacent facilities, that are to remain, that may occur as a result of the Work performed by Subcontractor.

   f) All required clean-up of Subcontractor's Work and work areas including debris and abandoned materials resulting from Subcontractor's Work into dumpsters provided by Contractor at locations determined by Contractor.

   g) Subcontractor shall outfit its employees with, and require the use of, all required safety equipment and materials including, but not limited to, hard hats, fall protection, eye and ear protection, reflective safety vests and flagging. Subcontractor will not be allowed to work on the Project without all required safety materials and equipment.

   h) Subcontractor is responsible for reviewing, coordinating, modifying, correcting, etc., all its suppliers' and second tier subcontractors' shop drawings, submittals, permits, etc. at no additional cost to Contractor. Subcontractor shall submit all required shop drawings and material lists for approval by Contractor and Client.

   i) Per Contract Specification Section 1C – Requirements for Preparation and Submittal of Engineering/ Architectural Drawings and Specifications (Subsection 2.3 – Record Drawings (As-built Drawings), Subcontractor shall be required to perform and submit for review to Contractor on a monthly basis the as-built drawings and notes for Subcontractor's portion of the Work being performed on the Project.

   j) Subcontractor's employees shall attend initial start-up Project safety consultation and regular jobsite progress meetings as directed by Contractor, at no additional cost to Contractor.

   k) Subcontractor will maintain its MBE/WBE status throughout the duration of the Project.

l) The following is a list of scope items (i thru xviii) associated with this Subcontract. In the event of a conflict between the Contract and the items listed below, the Contract shall be controlling:

   i) All Warranties as specified in the Contract.
   ii) Flashing at all roof penetrations including curbs for HRU's, HVAC and Mechanical Equipment, vent pipes and conduits.
   iii) Roof Hatches where shown.
   iv) Walkways for mechanical equipment.
   v) Flashings.
   vi) EPDM System which includes a 10 mil Polyvinyl Vapor Barrier, Tapered Insulation, fully adhered. 060 EPDM System installed per manufacturers recommendation and the Contract Documents.
   vii) Expansion Joints in Roofing System.
   viii) Temporary roofing (loose lay) at facades not completed at time of roofing.
   ix) Standing Seam Roofs at Property Protection Rooms.
   x) Waterproofing System at Roof Parking including Primer Self Adhered Rubberized Adhesive Sheet and 1/8" Protection Board. If the Project construction schedule requires, a primer compatible with "green concrete" shall be utilized.
   xi) Subcontractor shall be responsible for final cleaning of the surfaces prior to application of roofing/waterproofing product.
   xii) Subcontractor shall inspect all surfaces and notify Contractor in writing of any deficiencies that may affect the warranty of the system.
   xiii) Subcontractor shall coordinate the Work with other trades.
   xiv) Subcontractor shall be responsible for all hoisting, handling and storage of materials in this scope.
   xv) Subcontractor shall ensure that materials (old or new) staged on the roof are uniformly distributed so as to not overload the capacity of the roof structure at any one time.
   xvi) Includes cap flashing at precast panels.
   xvii) Loose lay edges.
   xviii) Final cleaning.

2) Contractor will provide the following at no cost for work under this Subcontract:

   a) Contractor will give Subcontractor 24 hours notice prior to start of its initial Work operations. Once a continuous or phased operation has begun, Subcontractor is expected to remain on the Project with qualified guidance and authority to complete the day-to-day operations of the Work.

   b) Contractor shall be responsible for removing heavy/large debris from surfaces.

3) The quantities of Work furnished under this Subcontract may vary considerably due to various indeterminate factors, however, the lump sum amounts shown are firm for the duration of the Project regardless of the final quantity of Work performed. Subcontractor acknowledges this is a Design/Build Contract and both parties agree there were sufficient parameters and details for Subcontractor to have provided the prices referenced in this Subcontract. It is understood that Subcontractor considered these parameters and details and agrees to keep firm the above Subcontract prices through any reasonable changes in design.

4) The Subcontract is not legally effective unless and/ or until Subcontractor is approved by the Client to perform the Work described.

5) **Daily Reports:** Subcontractor shall furnish a Daily Report to Contractor the first workday following the day the Work is performed. The Daily Report shall include, but is not be limited to, the following items:

   a) Number of employees on job.
   b) Description and number of pieces of equipment on job.
   c) Description and location of Work performed.
   d) Date and weather.
   e) Quantities of Work performed.

    f)    Condition of Traffic Control setups at specific date and time during the day, and specific actions taken to correct any non-conforming items found.

    g)    Verbal instructions received from Contractor.

    h)    Requests made by Subcontractor.

    i)    Specific problems that need resolution.

    j)    Situations now delaying or slowing progress.

    k)    Miscellaneous remarks.

6) **Quality Program Requirements:**

    a)    Subcontractor is required to supervise, maintain, manage, inspect, and direct the Work under this Subcontract and the personnel performing the Work while on the Project. In addition, Subcontractor is expected and obligated under this Subcontract to provide Contractor, the Client and the Project with quality assurance and quality control during the performance of Subcontractor's Work, and including, but not limited to, all professional and/or testing services, products, materials, equipment, labor and work supplied and performed in accordance with the Contract Plans, Specifications, Drawings, Addendums, or any other related documents adhered to and incorporated by reference under this Subcontract.

    b)    Subcontractor will establish, implement and maintain a Quality Program to perform, manage, control, document and assure that the Work complies with the requirements of the Contract Documents and is appropriate for the Work, at no additional cost to Contractor. As a minimum, the Subcontractor's Quality Program shall comply with the requirements of Contract Specification Section 1J, Contractor's Quality Program (CQP), (see Contract Special Conditions as referenced in Attachment B.1 below), and include the following ISO Thirteen Quality Elements:

        i)    Organization, Staffing and Responsibilities

        ii)    Submittal Management, Control of Documents & Document changes

        iii)    Receiving, Handling, Storage, & Control of Materials and Equipment

        iv)    Subcontractor & Supplier Control & External Audits

        v)    Inspection & Test Plan

        vi)    Control of Construction Process

        vii)    Control of Measuring & Testing Equipment

        viii)    Control of Non-Conforming Conditions/ Corrective & Preventative Actions

        ix)    Quality Records & Documentation

        x)    Contractors Internal Audit

        xi)    Training

        xii)    Statistical Analysis

        xiii)    Design Process Control

    c)    Subcontractor's Quality Program will be submitted to the Contractor for review and approval. Subcontractor may agree to adopt and implement the Contractor's approved Quality Program by providing a duly signed letter which will be sent to Subcontractor by Contractor's Project Quality Engineer under separate letter. Special attention shall be made to Element "6" of the Quality Program, under which Quality Work Plans (QWP's) for each definable feature of Work (not less than one per Contract Specification Section) will be submitted for approval by the Contractor and the Client, at least three (3) weeks prior to the planned start of work. Subcontractor will attend preparatory phase session(s) (meetings at the jobsite) to present each submitted QWP. **No Work may begin on the Project without the approved QWP.** Subcontractor will perform Just-In-Time training for all workers involved for each submitted QWP, before the start of work. The Just-In-Time training will be documented and attended by the Contractor and the Client.

7)    Subcontractor is required to read, sign and return the enclosed Memorandum ("Handling and Transportation of Sea Boxes/ Storage Containers", **Attachment B.1** of the Enclosures) back to Contractor with the signed Subcontract.

8)    In addition, per Subcontract Section 14.0, ASSIGNMENT, above: "Any subcontracting, assignment or hypothecation of this Subcontract or any of the Work or any amount due or payable hereunder without the prior written consent of Contractor and the Client (where required by Contract) shall be void. Additionally, it shall be grounds for termination of this Subcontract by Contractor, including termination of the Subcontractor's right to any further payment, and

authorization of Contractor to withhold all monies due or to become due to Subcontractor in accordance with Article 5.0 hereof."

9) The following modifications (including **Attachment A.3** below) are made to the General Conditions of this Subcontract:

a) **SECTION 5.0, PROGRESS AND FINAL PAYMENTS**, paragraph 5.3 is modified as follows:

   i) In line 4, change "ten percent (10%)" to "five percent (5%)".

b) **SECTION 9.0, PAYMENT OF CHARGES AND TAXES**, is modified as follows: At the end of this paragraph add a new sentence: "It is understood this Project is in New York State and is tax exempt. "Other" taxes or duties are the responsibility of Subcontractor."

c) **SECTION 24.0, SAFETY**, is modified as follows:
   i) Paragraph 24.1: At the end of this paragraph add the following: "All Subcontractors' employees shall have current Client Safety Training as defined in the Contract."
   ii) Paragraph 24.4: At the end of this paragraph add the following: "Subcontractor shall prepare and submit safe working procedures, drawings, etc. as required by the Contract documents."
   iii) Paragraph 24.5: At the end of this paragraph add the following: "Subcontractor shall have at least one on-site representative possess OSHA 30 hour training, and other qualifications as required by the Contract documents."
   iv) Paragraph 24.7: After the third sentence add the following: "Subcontractor shall submit a Safety Program for review and approval by Contractor and Client or accept in Contactor's program as the Subcontractor's Safety Program by signing and returning the acknowledgement as referenced under Attachment B.1 - Enclosures." **No Work may begin on the Project without an approved Safe Work Program.**

# ATTACHMENT A.3

**1) SECTION 10.0, INSURANCE, add the following paragraph 10.7 at the end of this Section:**

10.7    Client is providing the Project with an Owner Controlled Insurance Program (OCIP or WRAP-UP) to cover Contractor and Approved Subcontractors with insurance coverage, as defined in the Contract and Client's Specification Section Chapter 6, Contractor's Liability and Insurance, and Article 6.05, Required Insurance, both included in the Subcontract Enclosures, and the Contract's "Project Insurance Manual", of the Subcontract Enclosures, which are included and made a part of this Subcontract. The insurance coverage by Client will apply to the operations of the Approved Subcontractor at the Project Site, as defined in the Contract. Subcontractor and any sub-subcontractor shall be (1) responsible for understanding and adhering to the OCIP program per Client's Specification Article 6.05 and the Contract's "Project Insurance Manual"; (2) obligated to complete and submit the attached Contractor Insurance Information Enrollment Application form of the manual; and (3) approved by Client in writing as an Approved Enrolled Subcontractor prior to starting Work on the Project.

For on-site exposures not covered under the OCIP, Subcontractor must provide $2,000,000 Combined Single Limit each occurrence for Bodily Injury and Property Damage.

The OCIP provides coverage for Work at the Project site only. **In addition to the requirements for the insurance to be furnished by Subcontractor as stated in the OCIP, the following shall also be required:** Subcontractor is required to provide insurance for off-site work performed by Subcontractor. Off-site coverage will be as required under the Contract, including the limits as set forth under Article 10.0 INSURANCE, of this Subcontract, the below additions to paragraphs 10.2 and 10.3 and **Attachment A.3 thru Attachment A.5.**

**Add the following additional language at the end of paragraph 10.2:**

a) Certifications of insurance shall contain an amended cancellation clause to wit: "Should any of the above described policies be canceled before the expiration date thereof, the issuing company will mail 30 days written notice to the certificate holder" (the words "endeavor to ... failure to mail such notice shall impose no obligation for liability of any kind upon the company, its agents or representatives " are deleted from the Acord form).

**Add the following additional language at the end of paragraph 10.3:**

a) Special Endorsements CG 20 37 10 01 and CG 20 10 10 01 attached hereto, **Attachment A.4 and Attachment A.5 respectively,** shall be issued on Subcontractor's policy or policies covering Commercial General Liability or Comprehensive General Liability. In addition, a third endorsement, **Attachment A.6,** shall be issued by Subcontractor's insurance company(s) and a copy provided to Contractor which include: 1) Primary and Non-Contributory language, 2) 30-day cancellation and 3) waiver of subrogation.

The above endorsements shall name as additional insured the following per the Contract: "Bus Depot and Maintenance Facility at Grand Avenue, Contract No. C-40418; New York City Transit Authority (NYCT); Manhattan and Bronx Surface Transit Operating Authority (MaBSTOA); Staten Island Rapid Transit Operating Authority (SIRTOA); Metropolitan Transportation Authority (MTA); Granite Halmar Construction Company, Inc., Granite Construction Company and all of their directors, officers, employees, agents, and consultants, and include the policy number(s)."

For Descriptions of Operations/ Locations on the Acord form, the words "All Operations in the State of New York" may be added in lieu of specific Project locations.

OR

**In the "Description of Operations" block the following shall be included:**

Bus Depot and Central Maintenance Facility at Grand Avenue
The Boroughs of Queens
MTA Contract Number C-40418

**In the "Name and Address of Certificate Holders" block, the following shall be shown:**

New York City Transit Authority (NYCT)
Manhattan and Bronx Surface Transit Operating Authority (MaBSTOA)
Staten Island Rapid Transit Operating Authority (SIRTOA)
Metropolitan Transportation Authority (MTA)
Granite Halmar Construction Company, Inc.
Granite Construction Company

## 2) INSURANCE LIABILITY LIMITS FOR OFF SITE OPERATIONS OR FOR SUBCONTRACTORS WHO ARE NOT APPROVED TO BE ENROLLED IN CLIENT'S OCIP:

a) Workers' Compensation & Employer Liability

Workers' Compensation Limits – Statutory

Employers Liability Limits including Maritime Coverage:

$2,000,000 Each Accident
$2,000,000 Disease - Policy Limit
$2,000,000 Disease - Each Employee

b) Commercial General Liability (Occurrence Form Only) Limits

$2,000,000 Each Occurrence / **$2,000,000 Aggregate**
$2,000,000 Personal Injury Liability
$2,000,000 Aggregate for Products-Completed Operations

OR

c) Comprehensive General Liability Limits

$2,000,000 Each Occurrence
$2,000,000 Aggregate

Including products, completed operations, contractual liability, broad form property damage, and coverage for explosion, collapse and underground damages.

d) Automobile Liability Limits

$2,000,000 Combined Single Limit Each Occurrence Bodily Injury and Property Damage Including Owned, Non-owned, and Hired Vehicles

The following endorsements are intended for Subcontractor's Insurance Provider to process, sign and submit to Granite Halmar as required under this Subcontract.  They are not intended for Subcontractor to sign and return.

# ATTACHMENT A.4

POLICY NUMBER:                    COMMERCIAL GENERAL LIABILITY    CG 20 37 10 01

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED – OWNERS, LESSEES OR
## CONTRACTORS - COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERICAL GENERAL LIABILITY COVERAGE PART

# SCHEDULE

| |
|---|
| **Name of Person or Organization:**<br>New York City Transit Authority (NYCT); Manhattan and Bronx Surface Transit Operating Authority (MaBSTOA); Staten Island Rapid Transit Operating Authority (SIRTOA); Metropolitan Transportation Authority (MTA); Granite Halmar Construction Company, Inc., Granite Construction Company and all of their directors, officers, employees, agents, and consultants, and include the policy number(s) |
| **Location and Description of Completed Operations:**<br>Bus Depot and Maintenance Facility at Grand Avenue, Contract No. C-40418 |
| **Additional Premium:** |

(If no entry appears above, information required to complete this endorsement will be shown in the declarations as applicable to this endorsement.)

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products - completed operations hazard".

CG 20 37 10 01                    © ISO Properties, Inc., 2000                    **Page 1 of 1**

K.G. Industries, Inc., 360047.10.23, REV #1                    Granite Halmar Construction Company, Inc.

# ATTACHMENT A.5

POLICY NUMBER: _____     COMMERCIAL GENERAL LIABILITY     CG 20 10 10 01

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization:**
New York City Transit Authority (NYCT); Manhattan and Bronx Surface Transit Operating Authority (MaBSTOA); Staten Island Rapid Transit Operating Authority (SIRTOA); Metropolitan Transportation Authority (MTA); Granite Halmar Construction Company, Inc., Granite Construction Company and all of their directors, officers, employees, agents, and consultants, and include the policy number(s)

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** **Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured

**B.** With respect to the insurance afforded to these additional insureds, the following exclusion is added:

**2. Exclusions**
This insurance does not apply to "bodily injury" or "property damage" occurring after;

**(1)** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

**(2)** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**CG 20 10 10 01**          © ISO Properties, Inc., 2000          **Page 1 of 1**

K.G. Industries, Inc., 360047.10.23, REV #1                Granite Halmar Construction Company, Inc.

# ATTACHMENT A.6

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**PRIMARY AND NON-CONTRIBUTORY CLAUSE ENDORSEMENT**
**30- DAY NOTICE OF CANCELLATION**
**WAIVER OF SUBROGATION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

# SCHEDULE

Name of Person or Organization: (Add Name of Additional Insureds below)

New York City Transit Authority (NYCT); Manhattan and Bronx Surface Transit Operating Authority (MaBSTOA); Staten Island Rapid Transit Operating Authority (SIRTOA); Metropolitan Transportation Authority (MTA); Granite Halmar Construction Company, Inc., Granite Construction Company and all of their directors, officers, employees, agents, and consultants, and include the policy number(s)

The following is added to **SECTION IV-COMERCIAL GENERAL LIABILITY CONDITIONS:**

**PRIMARY AND NON-CONTRIBUTORY CLAUSE**

It is agreed that the insurance provided by this endorsement is primary. Other insurance afforded to the person or organization shown in the schedule shall be excess of and non-contributory with, the insurance provided by this endorsement.

**30- DAY NOTICE OF CANCELLATION**

This Insurance policy will not be cancelled, limited, non renewed, or coverage reduced until thirty (30) days after receipt by the additional insured named above of a written notice of such cancellation, reduction of coverage or non renewal. In the event of cancellation for non-payment of premium, ten (10) days written notice of such cancellation will be given.

**WAIVER OF SUBROGATION**

The company waives any right of subrogation against the above-scheduled additional insured for work performed by _____.

It is further agreed that the insurance afforded by this policy applies severally as to each insured except that the inclusion of more than one insured shall not operate to increase the limit of the company's liability and the inclusion hereunder of any person or organization as an insured shall not affect any right which such person or organization would have as a claimant if not so included.

_____
Authorized Insurance Representative

Policy Number: _____ Transaction Effective Date: _____

K.G. Industries, Inc., 360047.10.23, REV #1      Granite Halmar Construction Company, Inc.

# Attachments A.1 – A.6 and B.1

The following documents are incorporated herein by reference as attachments to this Subcontract:

Attachment A.1 - Work to Perform

Attachment A.2 - Special Provisions

Attachment A.3 - Insurance Requirements

Attachment A.4 - Special Endorsement CG 20 37 10 01

Attachment A.5 - Special Endorsement CG 20 10 10 01

Attachment A.6 - Special Endorsement for Primary, 30-Day Cancellation and Waiver of Subrogation

Attachment B.1 – Subcontractor Enclosures

# ATTACHMENT B.1

## SUBCONTRACT ENCLOSURES:

Subcontractor acknowledges familiarity with, and agrees to abide by, the Construction Contract Plans, Standard Specifications, Supplemental Specifications, Special Provisions and Supplemental Special Provisions and special attention is directed to the following sections of the Special Provisions which are attached (Attachment B.1) and made a part of this Subcontract: **(Note: In all attachments, Subcontractor must insert the word "Subcontractor" in place of "Contractor" where logically applicable). Subcontractor must include the following provisions in any approved second or lower tier subcontracts for work performed on this Project (see Article 14, Assignment, hereof).**

a) Information for Bidders Data Sheet (i thru xx)
b) Important Notice to Bidders (1 thru 2)
c) Information to Bidders (1 thru 29)
d) Contract Terms and Conditions (1 thru 3)
e) Chapter 1 – General Provisions and Definitions
f) Chapter 2 – Provisions Relating to Time
g) Chapter 3 – Price and Payments
h) Chapter 4 – Changes to the Contract
i) Chapter 5 – Security for the Performance of Work
j) Chapter 6 – Contractor's Liability and Insurance
k) Chapter 7 – Contractor's Default
l) Chapter 8 – Authority of the Engineer: Disputes and Claims
m) Chapter 9 – Inspection, Testing and Guarantees
n) Chapter 10 – Miscellaneous Provisions
o) Special Conditions (SC 1 thru SC 15)
p) Labor Law - Schedule of Prevailing Rates and Supplemental Benefits for the City of New York.
q) MTA Field Procedures Manual (Includes OCIP Requirements and OCIP Forms to be filled out by Subcontractor and submitted for approval).
r) Certified Payroll Cover Letter (To be attached to your certified payroll reports).
s) Monthly Work Force Utilization Report WF-257.
t) Monthly Contractor DBE Progress Report (Form E).
u) Certification of Equal Employment Opportunity (Sample Text).
v) Certificate of Non-Segregated Facilities (Sample Text).
w) Minimum Wage Certificate – Certificate Per the Contract
x) Owner's Affidavit Certifying Payment to Laborers, Subcontractors, and Suppliers of Materials and Services.
y) Contractor's Affidavit of Subcontractor "Schedule A" (Needs to be submitted with every pay requisition back to Contractor).
z) Acknowledgment of Granite Halmar Safety Memo Regarding Handling and Transportation of Sea Boxes/Storage Containers.
aa) Acknowledgement of Granite Halmar's Safety Program (Sample Text).
bb) Granite Halmar's Safety Management Program.